IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HERU HANNIBAL SEGU                    *
       Plaintiff
    v.                                     *    CIVIL ACTION NO.  AMD-07-3299

MARYLAND DIVISION OF CORRECTIONS *
WARDEN RODERICK R. SOWERS
OFFICER T. HINKLE                      *
OFFICER D. MILLER
OFFICER R. MARTIN                      *
OFFICER J. FOUTZ
OFFICER M. STOUFFER                    *
SGT. WOLFENBERGER
SGT. REED                              *
       Defendants
                         ***

MEMORANDUM

In this 42 U.S.C. § 1983 damages action, plaintiff, a former Maryland inmate, alleges that he was brutally attacked, while he was handcuffed and without provocation, by several correctional officers at the Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland.[1] Before the court is defendants' motions to dismiss or, in the alternative, for summary judgment, to which plaintiff has filed an opposition.[2] Paper Nos. 22, 24 & 33. Defendants chose not to file a reply memorandum. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008).  For the reasons set forth within, the court concludes that plaintiff has generated genuine disputes of material fact; accordingly, the motion shall be denied.

---

[1]Plaintiff was released from Maryland to a Pennsylvania detainer soon after the alleged incident occurred. At the time he filed this action and presently he is confined at the State Correctional Institution at Retreat located in Hunlock Creek, Pennsylvania.

[2]Plaintiff has filed a "motion for adding additional information,"  Paper No. 34, which, construed as a supplemental memorandum, shall be granted.

Plaintiff's version of the incident in question is supported directly by his own sworn allegations based on personal knowledge. On October 25, 2007, he was awakened by Officer Miller and told to pack his belongings for relocation to a different tier in RCI Housing Unit #3.  He claims that when he questioned the reason or necessity for the move and asked to speak to a supervisor, he was accused of refusing housing and disobeying a direct order and that he would be assigned to disciplinary housing.  Plaintiff states that he was placed in handcuffs by Officer Hinkle.  He attests that during the escort Hinkle called him a racial epithet, referred to him as "boy," and indicated that "[he was] going to teach [plaintiff] a lesson boy when you get over there."

Plaintiff further alleges that upon his arrival at Housing Unit #5 he was taken into a strip search room, where Hinkle, Miller and other officers (Foutz, Martin, and Stouffer) were present.[3]  He asserts that, while he was still handcuffed,  Hinkle punched him approximately five times in his face and broke his back tooth, while Miller, Foutz, Martin and Stouffer stood by, laughed, made racist comments, and took no action to intervene. He claims that after this first attack, he was uncuffed and strip searched, but after he dressed and was handcuffed anew, Hinkle attacked him again, striking him in the face, causing multiple bruises and abrasions. Plaintiff asserts he suffered significant injuries, including but not limited to loss of sight in one eye and a split lip causing severe bleeding, but, as mentioned below, the documentary record does not support his claims of severe

---

[3]Plaintiff alleges that Sgt. Wolfenberger was the supervisor of Housing Unit #5 and is liable for sanctioning the attack because he "never once tried to see what was going on in the strip search room" and knew that it was against protocol to have non-Housing Unit #5 officers, such as Hinkle and Miller, conduct a strip search in that housing unit.  He further asserts that Sgt. Reed was the supervisor of Housing Unit #3 and was responsible for allowing Hinkle and Miller to move him off the tier, which was designated as a tier for 40+ older inmates such as himself.  Plaintiff accuses Reed of planning the attack with Hinkle and Miller. Finally, plaintiff claims that Warden Sowers knew of the attack after it had occurred.  He accuses Sowers of helping to cover-up the incident by refusing family visits, denying him an adjustment hearing, keeping him from seeing the DOC Internal Investigative Unit, and denying him medical treatment beyond an initial observation by healthcare staff.

injury. Plaintiff claims that Stouffer told him that if he complained about the incident, they would say that plaintiff attacked Hinkle.[4] Plaintiff argues that Hinckle and other officers harbored ill feelings towards him because he had filed grievances against officers, he was outspoken, and he is a member of the Nation of Islam.[5] Finally, plaintiff maintains that the supervisory officials are liable because they conspired to cover-up the incident as their inaction in effect condoned the actions of Hinckle and other officers.

Of course, defendants have submitted evidence of a different version of the incident. As supported by their motion exhibits, including records from plaintiff's base and medical files along with investigative reports, they rely on the following narrative.

Overcrowding at RCI required that several RCI inmates, including plaintiff, be moved from A Tier to C Tier of Housing Unit #3. Paper No. 22, Ex. 1. Defendants claim that when informed of the move on October 25, 2007, plaintiff refused, was given a direct order to move, and again refused to do so. *Id.*  Plaintiff was told that if he did not move, he would be sent to Housing Unit #5 for refusing housing. Plaintiff again refused to move. *Id.* Hinckle[6] and Miller were informed of the situation, handcuffed plaintiff, and escorted him back to his cell to pack his property. *Id.* A notice of infraction was issued for refusing housing and a direct order. *Id.*  Hinckle and Miller then escorted

---

[4]Plaintiff contends that the attack was unprovoked and as he only had two weeks before he was due to be released from the DOC, it would have been "suicide for [him] to attempt to attack any officer or inmate." He speculates that he was attacked because defendants assumed he would not seek relief after his release.

[5]Plaintiff points to several circumstances which, he says, support his version of the incident. For example, he notes that he weighed 240 pounds at the time, thus undermining defendants' claim that he fell on Hinckle, knocking both of them to the floor, but without causing Hinckle to suffer any bruising or injury. In addition, no alarm was sounded to alert officers that Hinckle had been attacked, and Hinckle did not file criminal charges against him. While there are rational explanations for these facts that are consistent with defendants' version of the incident, on summary judgment, plaintiff is entitled to all reasonable inferences.

[6]The Clerk shall amend the docket to reflect the correct spelling of this defendant's name.

plaintiff to Housing Unit #5.  During the escort plaintiff appeared agitated, looked directly at Hinckle and commented "all you officers here are bitches, and I'll find out what you are made of when these cuffs come off!"  *Id.*

Defendants contend that shortly after they arrived at Housing Unit #5 with plaintiff, defendants Stauffer[7] and Foutz assisted Hinckle and Miller with a strip search of plaintiff.  *Id.* According to defendants' exhibits, when Foutz removed plaintiff's handcuffs, plaintiff turned and lunged toward Hinckle with his head down, ramming his left shoulder into Hinckle's chest. *Id.* Both plaintiff and Hinckle fell to the floor with plaintiff landing on his face and Hinckle landing on his back.[8]  *Id.* Plaintiff was then restrained by Foutz and Stauffer and ordered to put his hands behind his back to be handcuffed. *Id.* Plaintiff complied without further incident.

It is undisputed that plaintiff received a medical and dental evaluation immediately after the incident, photographs were taken, and a dental x-ray was taken for a possible chipped tooth.  *Id.*, Ex. 1. The left side of plaintiff's face was swollen. He had a brush burn on his right cheek and a half-inch laceration on his lower lip.  *Id.*  No sutures were needed.  Plaintiff's nose also appeared swollen but no bruising was noted. *Id.* Plaintiff was given Bacitracin for his lip. *Id.*  The dental x-ray showed no fractures. *Id.*

An institutional investigation determined that the force applied by officers was employed professionally in self-defense.  Paper No. 22, Ex. 1.  As plaintiff reported that he had been assaulted

---

[7]The Clerk shall amend the docket to reflect the correct spelling of this defendant's name.

[8]During the course of his interview with the IIU investigator Hinckle indicated that when plaintiff's handcuffs were removed in the segregation property room, he lunged forward with his head down and grabbed Hinckle about the waist.  Paper No. 22, Ex. 1.  Hinckle and plaintiff then fell to the floor, but as plaintiff's head was under Hinckle's right arm, he fell face-first onto the floor. *Id.* Plaintiff's face was bleeding when he was assisted to his feet and he was taken to the dispensary for medical treatment. *Id.*

by Hinckle, however, his statement was taken and an investigation was conducted by the IIU.  Paper

No. 22, Ex. 1.  After review, the IIU investigator determined that no further action would be taken

based on the lack of corroborating evidence, *e.g.*, witness testimony and photographs, to support

plaintiff's allegation that he was physically assaulted and injured by Hinckle. *Id*. Plaintiff was

mandatorily released to a Pennsylvania detainer on November 9, 2007, and thus, his alleged

infractions were never considered at an adjustment hearing.  *Id*. Exs. 1 &  2.

Fed.R.Civ.P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should

"view the evidence in the light most favorable to . . . . the nonmovant, and draw all inferences in her

favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia

Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide

5

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The proper application of the applicable standard here, under the prevailing substantive law, compels the court to conclude that plaintiff has generated genuine disputes of material fact. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must examine: (1) the need for application of force; (2) the relationship between that need and the amount of force applied; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of the response. *See Whitley v. Albers,* 475 U. S. 312, 321 (1986). Inherent in the protection afforded by the Eighth Amendment is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10. Further, while the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[9]

---

[9]When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in

(continued...)

In this case, there plainly exists a genuine dispute of material fact regarding the October 25, 2007, incident. Plaintiff has proffered under oath a plausible version of a physical attack on a disfavored inmate, who was soon to be released to another state, by correctional officers harboring some animus against him. In his opposition, plaintiff has listed some dozen inmates who are alleged witnesses of the incident in suit. (He claims he has withheld their identities until now to protect them from retaliation.) If it is true that Officer Hinckle repeatedly punched plaintiff (while the latter was handcuffed) in the face without provocation while other officers watched and took no action, plaintiff has suffered a constitutional injury redressable under § 1983. The inconsistencies in plaintiff's version of the incident, e.g., his allegation of a loss of sight in one eye, are not fatal to his claim.

Defendants opine that plaintiff's injuries were consistent with their self-defense rationale and the accounts they have provided, and this would appear to be true.[10]  The court finds, however, that the injuries are just as likely consistent with plaintiff's affirmations.  As a result of these disputed facts regarding the need for force, the amount of force applied against plaintiff, and the extent of plaintiff's injuries, this case cannot be resolved on summary judgment, at least not at this stage of the case. Credibility determinations are to be left for the trier of fact where, as here, plaintiff's narrative, supported by statements under oath and based on personal knowledge,  is not contrary to

---

(...continued)

the medical records generated shortly after the incident; and (4) whether the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident.  *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997); and *Norman*, 25 F.3d at 1264.

[10]None of the defendants provide declarations or affidavits based on personal knowledge or oath, although some of the statements made by some of them during the internal investigation were given under oath.

the laws of physics and the inferences upon which he relies rest comfortably within the realm of "reasonable." (For like reasons, defendants are not entitled to qualified immunity at this stage of the case.)

Accordingly, defendants' motion shall be denied.  Plaintiff shall be required to provide the court a status report regarding his minimum and maximum release date on his Pennsylvania sentence and whether he has any outstanding detainers, so that the court may determine how to proceed with this action.[11]  An Order follows.

Date: January 8, 2009                                        _/s/_____
                                                            Andre M. Davis
                                                            United States District Judge

---

[11]Plaintiff's *unadjudicated* infractions give rise to no due process violation as he suffered no deprivation of liberty in consequence of the violations. (He was transferred to Pennsylvania based on a detainer on November 9, 2007.) Therefore, the due process claim is dismissed.